IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| South Carolinians for Responsible Government, | Civil Action No. 3:06-cv-01640-MBS |
| Plaintiff, | |
| vs. | |
| Kenneth C. Krawcheck, Edward E. Duryea, Marvin D. Infinger, Susan P. McWilliams, Priscilla L. Tanner, Johnnie M. Walters, all in their official capacities as commissioners of the South Carolina Ethics Commission, and Herbert R. Hayden, in his capacity as Executive Director of the South Carolina Ethics Commission, | OPINION AND ORDER |
| Defendants. | |

In the underlying matter, South Carolinians for Responsible Government ("Plaintiff") filed this suit for declaratory and injunctive relief against Kenneth C. Krawcheck, Edward E. Duryea, Marvin D. Infinger, Susan P. McWilliams, Pricilla L. Tanner, and Johnnie M. Walters, all in their official capacities as commissioners of the South Carolina Ethics Commission, and against Herbert R. Hayden, in his capacity as Executive Director of the South Carolina Ethics Commission (hereinafter collectively "Defendants") alleging that certain sections of the South Carolina Ethics, Government Accountability, and Campaign Reform Act of 1991, S.C. Code Ann. §§ 8-13-1300, et seq., violates the First Amendment of the United States Constitution. (ECF No. 1.) Specifically, Plaintiff asked the court to protect its First Amendment rights to

1

freely speak, freely associate, and to petition the government, and its Fourteenth Amendment right to be treated equally under the laws.

Pending before the court are two dispositive motions: (1) Defendants' Motion to Dismiss, (ECF No. 147), and (2) Plaintiff's Motion for Summary Judgment. (ECF No. 123.) For the reasons explained below, the court denies Defendants' motion, grants Plaintiff's motion in part, and does not reach the remainder of Plaintiff's motion.

## **FACTUAL BACKGROUND**

Plaintiff is a nonprofit organization under Section 501(c)(4) of the Internal Revenue Code with its principal place of business located in Richland County, South Carolina. (ECF No. 1 ¶ 1.) Plaintiff asserts that its primary purpose is to engage in the promotion of social welfare by educating and informing citizenry on important public issues of the day. (ECF No. 1 ¶ 4.) Among the issues for which it advocates are limited government, reducing taxes, and "school choice," which is a term used to describe public policies and legislation that purportedly empowers parents to choose where their children receive their primary and secondary-school education. (ECF No. 1 ¶¶ 4 & 8.)

In May 2006, the South Carolina General Assembly was considering proposed legislation that would implement school choice in South Carolina. (ECF No. 1 ¶ 11.) In an effort to alert the public of this proposed legislation, Plaintiff funded a series of radio advertisements in selected areas of South Carolina that supported the proposed legislation. These radio advertisements identified certain state legislators who Plaintiff believed could be influenced by their constituents to vote for, or at least not impede, passage of this pending legislation, including Representative William F. Cotty ("Representative Cotty"). (ECF No. 1 ¶15.) The total cost of the advertisements exceeded $500.00. (ECF No. 1 ¶ 16.)

The advertisements that ran stated as follows:

> It's a terrible fact. In South Carolina we have 125,000 children. Trapped. Trapped in failing schools. It's so bad, 50% of our children just give up and drop out. What can parents do? There's a way to rescue our children. It's called School Choice. If School Choice passes the State Legislature, parents will be given a $1,000 tax credit to send their child to the school of their choice. Isn't it about time? If [*name of local legislator*] can give tax credits to movie makers, hybrid car owners and out-of-state corporations, can't [*he or she*] give at least one tax credit to parents? Tell [*name of local legislator*] to stand up for parents and kids—not the special interests. Call [*him or her*] in Columbia at [*legislator's telephone number*]. That's [*legislator's telephone number*]. Urge [*him or her*] to support School Choice. Paid for by South Carolinians for Responsible Government.

(ECF No. 1 ¶ 17.)

Plaintiff's advertisements aired on the day before and the day of the General Assembly's vote on the proposed legislation. (ECF No.1 ¶ 15.) Those days, however, fell within forty-five days of a primary election. Representative Cotty requested the South Carolina Ethics Commission[1] address the question of whether an organization with an Internal Revenue Code designation of 501(c)(4) that uses its financial resources to influence the outcome of an election within the final forty-five day window of an election is a "committee" within the definition of S.C. Code Ann. § 8-13-1300(6)[2] and is thus required to disclose its financial receipts and expenditures. (ECF No. 1 ¶ 18.)

---

[1] The South Carolina State Ethics Commission is the state agency responsible for enforcing the State Ethics Code. See S.C. Code Ann. §§ 8-13-310 to 320.

[2] S.C. Code Ann. § 8-13-1300(6) provides:
"Committee" means an association, a club, an organization, or a group of persons which, to influence the outcome of an elective office, receives contributions or makes expenditures in excess of five hundred dollars in the aggregate during an election cycle. It also means a person who, to influence the outcome of an elective office, makes:
(a) contributions aggregating at least twenty-five thousand dollars during an election cycle to or at the request of a candidate or a committee, or a combination of them; or
(b) independent expenditures aggregating five hundred dollars or more during an election cycle for the election or defeat of a candidate.
"Committee" includes a party committee, a legislative caucus committee, a noncandidate committee, or a committee that is not a campaign committee for a candidate but that is organized for the purpose of influencing an election.

Because of the timing and content of Plaintiff's advertisements, the South Carolina State Ethics Commission, under the signature of its Executive Director, sent Plaintiff a letter that ordered Plaintiff to register with the government as a "committee" and to file certain disclosure reports within eleven days from the letter's date. The letter began with a declaration that Defendants believed Plaintiff had "attempted to influence the outcome of an election in Richland County." (ECF No. 1-1.) The letter further stated that "South Carolinians for Responsible Government must register with the Commission as a committee and file disclosure reports." (ECF No. 1-1.) It concluded by stating: "You must file both forms no later than May 30, 2006 to avoid enforcement action." Id.

Plaintiff filed this action on May 30, 2006, which was the deadline for Plaintiff to file its disclosure reports. On July 31, 2006, Defendants moved for dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Honorable Matthew J. Perry, Jr. granted Defendants' motion and dismissed this case.[3] (ECF No. 27.) Thereafter, on December 12, 2006, Plaintiff sought clarification and reconsideration. (ECF No. 31.) On March 25, 2009, Judge Perry granted Plaintiff's motion for clarification and reconsideration. (ECF No. 85.)

On April 15, 2010, Plaintiff moved for summary judgment on several different grounds, seeking the following declaratory relief:

(1) that the South Carolina Ethics Code's definition of "committee"—S.C. Code Ann. § 8-13-1300(6)—is unconstitutionally overbroad on its face;

(2) that the definition of "committee" is unconstitutional as applied to Plaintiff;

---

[3] This matter was originally assigned to the Honorable Matthew J. Perry, Jr. ("Judge Perry"). The case was reassigned to the Honorable Margaret B. Seymour ("Judge Seymour") on August 12, 2011, following the death of Judge Perry.

4

(3) that the South Carolina Ethics Code's definition of "influence the outcome of an elective office"—S.C. Code Ann. § 8-13-1300(31)(c)—is unconstitutionally overbroad on its face; and

(4) that the definition of "influence the outcome of an elective office" is unconstitutional as applied to Plaintiffs' radio advertisements.

On September 24, 2010, Defendants moved to dismiss on grounds that this case has been rendered moot by a ruling from the Honorable Terry L. Wooten ("Judge Wooten") in <u>South Carolina Citizens for Life, Inc. v. Krawcheck</u>, No. 4:06-cv-2773-TLW, 2010 U.S. Dist. LEXIS 96187 (D.S.C. Sept. 13, 2010).

On November 19, 2010, Judge Perry held a motions hearing. Judge Perry denied Defendants' motion to dismiss and granted Plaintiff's motion for summary judgment in part and denied the motion in part. (ECF No. 165 pp. 64 & 65.) In orally giving his decision, Judge Perry stated:

> I've considered your arguments and I'm of the view that this court does not take issue with and is prepared to join the decision that Judge Wooten made with respect to the issue that he decided. That is to say, that the statutory provision establishing and describing committee is overbroad and therefore in violation of the constitution of the United States. So this court on principles of collateral estoppel will associate itself with that portion of Judge Wooten's order.

(ECF No. 165 p. 64.)

Judge Perry denied the remaining portions of Plaintiff's motion for summary judgment. In denying the remaining portions of Plaintiff's motion, Judge Perry stated:

> Now with respect to the other issues pending before this court I note that the action challenged by the plaintiff occurred in 2006 and represents the matter as it existed at that time. I do note that the commission at that time described plaintiff as a committee and directed the plaintiff to comply with the statutory provisions requiring reports, et cetera.
>
> In that the plaintiff is not now described as a "committee" the assertion made by the defendant's executive director is no longer of any consequence. And so I deny the plaintiff's motion for summary judgment with respect to that issue . . . .
> (ECF No. 165 pp. 64-45.)

5

The court did not enter a written order.

On January 18, 2012, the Honorable Margaret B. Seymour reheard Plaintiff's motion for summary judgment and Defendants' motion to dismiss.

**STANDARD OF REVIEW FOR SUMMARY JUDGMENT**

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial. Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (1986) (citing First Nat'l of Ariz. v. Cities Service Co., 391 U.S. 253, 289 (1968)). In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123–24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

**DISCUSSION**

**I.     Defendants' Motion to Dismiss**

Defendants assert that the complaint should be dismissed. Defendants contend the controversy has been rendered moot by a decision of Judge Wooten. In his September 13, 2010 order, South Carolina Citizens for Life, Judge Wooten found that the definition of "committee" located at S.C. Code Ann. § 8-13-1300(6) is facially invalid on the ground that the definition is unconstitutionally overbroad. According to Defendants, there no longer exists a case or

controversy in this case because the issue of whether § 8-13-1300(6) is unconstitutional has been decided by Judge Wooten.

Judge Wooten's order is not that of a controlling court—such as the United State Supreme Court or the Fourth Circuit Court of Appeals—but instead from a peer judge within this District. Accordingly, it is not necessarily binding on this court. See, e.g., Gregg v. GI Apparel, Inc., No. 3:05-2399-MBS, 2006 U.S. Dist. LEXIS 7464, at *5 n.3 (D.S.C. Feb. 13, 2006) ("[S]ince the intra-court comity doctrine is discretionary, the court views the decisions of its fellow judges as persuasive but is not bound by their decisions."); Atl. Floor Servs., Inc. v. Wal-Mart Stores, Inc., 334 F. Supp. 2d 875, 879 n.1 (D.S.C. 2004) (reminding that "[t]his Court is not bound to follow the reasoning" of a different judge within the same district). Since, this court is not bound by the decision of Judge Wooten, the court declines to find there is no actual case or controversy presented by Plaintiff's complaint. Defendants' motion to dismiss on the grounds of mootness is **DENIED**.

II.  **Plaintiff's Motion for Summary Judgment**

In Plaintiff's motion for summary judgment, Plaintiff seeks declaratory relief with respect to four issues. Plaintiff challenges the constitutionality of the South Carolina Ethics Code's definition of "committee," S.C. Code Ann. § 8-13-1300(6), both on its face and as applied to Plaintiff. Plaintiff also challenges the constitutionality of the Ethics Code's definition of "influence the outcome of an elective office," id., § 8-13-1300(31)(c), both on its face and as applied to Plaintiff's radio advertisement.

A.  **South Carolina Ethics Code's Definition of "Committee," S.C. Code Ann. § 8-13-1300(6)**

1.  **Facial Challenge**

Defendants' enforcement efforts against Plaintiff stem from the designation of Plaintiff as a "committee." Under the State Ethics Code, if a group is deemed to be a "committee," it is subject to the following regulations, among others:

- It must register with the Ethics Commission and file a statement of organization that discloses (a) the group's address and telephone number; (b) a summary of the group's purpose; (c) any company that sponsors the group; (d) the "trade, profession, or primary interests of contributors to the committee"; (e) the names, addresses, telephone numbers, occupations, and principal places of business for the group's chairman, treasurer, and records custodian; and (f) the group's banking information, including account numbers, S.C. Code Ann. § 8-13-1306(A);

- It must periodically file a "certified campaign report detailing campaign contributions and expenditures," which must contain "the name and address of each person making a contribution of more than one hundred dollars and the amount and date of receipt of each contribution," among other information, id. § 8-13-1308(F);

- It is prohibited from accepting anonymous contributions, id. § 8-13-1324;

- It must abide by certain restrictions related to bank accounts, id. § 8-13-1312;

- It may only accept contributions totaling $3500 or less from any person or group per calendar year, id. § 8-13-1322;

- Upon dissolution, it must disburse any remaining monies only to statutorily-prescribed groups, including "the state's general fund"; id. § 8-13-1370(C);

- It is subject to civil penalties of at least five thousand dollars if it fails to comply with the statutory restrictions above, and this penalty can go up to "five hundred percent of the amount of contributions or anything of value that should have been reported," id. § 8-13-1520(B); and

- It is subject to criminal sanctions of up to one year in jail if it does not comply with the requirements of the Ethics Code, id. §§ 8-13-1520(A), (B).

Thus, it is essential that the definition of "committee" be narrowly confined so that organizations are not wrongly swept into the current of these "burdensome consequences." N.C. Right to Life, Inc. v. Leake, 525 F.3d 274, 286 (4th Cir. 2008).

The Supreme Court holds laws aimed at regulating political speech to be permissible only in the limited situation where the speech is "unambiguously related to the campaign of a

8

particular . . . candidate." Buckley v. Valeo, 424 U.S. 1, 80 (1976). An organization can be subjected to speech regulations like those found in the South Carolina Ethics Code only if it is "under the control of a candidate or the major purpose of which is the nomination or election of a candidate." Buckley, 424 U.S. at 79.

Since Buckley, courts have confirmed that only groups having "the major purpose" of electioneering can be constitutionally subject to political speech regulations. See, e.g., FEC v. Mass. Citizens for Life, Inc., 479 U.S. 238, 262 (1986) (reiterating that a group could be subject to speech restrictions only if "the organization's major purpose may be regarded as campaign activity"); Leake, 525 F.3d at 288 ("The Supreme Court has thus not relaxed the requirement that an organization have 'the major purpose' of supporting or opposing a candidate to be considered a political committee."). The Fourth Circuit recently summarized the law on this point by concluding:

> Thus, we are convinced that the Court in Buckley did indeed mean exactly what it said when it held that an entity must have "*the* major purpose" of supporting or opposing a candidate to be designated a political committee. Narrowly construing the definition of political committee in that way ensures that the burdens of political committee designation only fall on entities whose primary, or only, activities are within the "core" of Congress's power to regulate elections. Permitting the regulation of organizations as political committees when the goal of influencing elections is merely one of multiple "major purposes" threatens the regulation of too much ordinary political speech to be constitutional.

Leake, 525 F.3d at 288–89 (emphasis supplied by the Leake court and internal citations omitted).

Laws that restrict political speech must be narrowly tailored so that they only regulate groups that are organized for "the major purpose" of electioneering. Additionally, states cannot use a gross dollar amount—e.g., campaign-related expenditures totaling $500—as a proxy for an organization's "major purpose," as such expenditures could amount to a *de minimis* portion of

9

the organization's total expenditures. See, e.g., N.M. Youth Organized v. Herrera, 611 F.3d 669, 679 (10th Cir. 2010) ("To automatically classify such organizations [that spend $500 on election-related speech] as political committees contradicts the Supreme Court's repeated admonition that only organizations that have 'the major purpose' of electing or defeating a candidate may be forced to register as political organizations.").

Measured against these standards, the South Carolina Ethics Code's definition of "committee" is more expansive than that which is constitutionally permitted under Buckley, Leake, and related decisions. The State Ethics Code defines a "committee" as:

> "Committee" means an association, a club, an organization, or a group of persons which, to influence the outcome of an elective office, receives contributions or makes expenditures in excess of five hundred dollars in the aggregate during an election cycle. It also means a person who, to influence the outcome of an elective office, makes:
>
> (a) contributions aggregating at least twenty-five thousand dollars during an election cycle to or at the request of a candidate or a committee, or a combination of them; or
>
> (b) independent expenditures aggregating five hundred dollars or more during an election cycle for the election or defeat of a candidate.
>
> "Committee" includes a party committee, a legislative caucus committee, a noncandidate committee, or a committee that is not a campaign committee for a candidate but that is organized for the purpose of influencing an election.

S.C. Code Ann. § 8-13-1300(6).

On its face, this definition does not relate to an organization's "major purpose," nor does it tie the Ethics Code's regulations to an organization's main goal, conduct, or functions. Instead, it potentially subjects a group to the statutory burdens of a "committee" based on a single $500 transaction, regardless of whether (a) the transaction was relevant to the organization's "major purpose," or (b) the $500 expenditure constituted a meaningful portion of the group's disbursements. The definition of "committee" is therefore overbroad and facially

10

unconstitutional.[4] As such, the court reaches the same conclusion as Judge Wooten as to this issue. The doctrine of collateral estoppel provides an alternative basis for this court's determination that the definition of "committee" is overbroad and facially unconstitutional.[5]

The doctrine of collateral estoppel, "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate." In re Microsoft Corp. Antitrust Litigation, 355 F.3d 322, 326 (4th Cir. 2004). For collateral estoppel to apply to an issue or fact, it must be demonstrated that "(1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding." Id.

In the case before this court and in South Carolina Right to Life, the case before Judge Wooten, plaintiffs seek a declaration that that the definition of "committee" found in S.C. Code Ann. § 8-13-1300(6) is unconstitutional. In South Carolina Right to Life, Judge Wooten found the definition of "committee" as set forth in S.C. Code Ann. § 8-13-1300(6) overbroad and unconstitutional. That determination was "critical and necessary" in Judge Wooten's case.

---

[4] In opposing Plaintiff's summary judgment motion, Defendants did not present this Court with any argument in support of the constitutionality of the definition of "committee," nor did they suggest any type of limiting construction that could be applicable to the definition. Instead, Defendants only argued that Plaintiff cannot rely on *Buckley*'s "the major purpose" test as a basis for summary judgment because this test was not stated in Plaintiff's Verified Complaint. The Court disagrees with Defendants' assessment of the pleadings. The Verified Complaint referenced Buckley and its principles. Moreover, Defendants recognized the primary role that Buckley's "the major purpose" test played in this litigation, as they referenced that test in two different places in their Answer. Additionally, subsequent filings from the parties relied on or incorporated Buckley's "the major purpose" test.

[5] Judge Perry and Judge Seymour raised the issue of collateral estoppel in their respective hearings. Defendants' counsel asserted in the November 2010 hearing before Judge Perry, that he was seeking summary judgment on two grounds, "one on collateral estoppel basis, but secondly independently. " (ECF No. 165 p. 25.)

Defendants in South Carolina Right to Life did not appeal Judge Wooten's decision, thus the judgment is final and valid. Additionally, Defendants in South Carolina Right to Life had a full and fair opportunity to litigate the constitutionality of this statute in the proceedings before Judge Wooten. In the case before this court, Defendants are the same Defendants that appeared before Judge Wooten in South Carolina Right to Life. Therefore, the court finds that all the requirements for collateral estoppel have been met.

## **CONCLUSION**

For the reasons set forth herein, the court **DENIES** Defendants' Motion to Dismiss. The court **GRANTS** Plaintiff's Motion for Summary Judgment with respect to its request for a declaration that, on its face, the South Carolina Ethics Code's definition of "committee" found in South Carolina Code § 8-13-1300(6) is overbroad and facially unconstitutional. Based on this relief, the Court finds that it does not need to address any of the remaining issues in Plaintiff's motion.

**IT IS ORDERED**.

/s/ Margaret B. Seymour
Chief United States District Judge

February 23, 2012
Columbia, South Carolina